Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| BORICUAS AUTO PARTS & SALES LLC Y OTROS<br><br>*Apelados*<br><br>v.<br><br>LUIS GONZÁLEZ FUENTES Y OTROS<br><br><br>*Demandados*<br><br>**LUIS ENRIQUE GONZÁLEZ FUENTES Y ÁNGEL RAFAEL GONZÁLEZ FUENTES**<br><br>*Apelantes* | KLAN202400550 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2023CV01168 (501)<br><br><br>Sobre: Injunction (Entredicho Provisional, Injunction Preliminar y Permanente) y Otros |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de marzo de 2025.

Comparece Luis Enrique González Fuentes y Ángel Rafael González Fuentes (apelantes), y solicitan la revocación de la *Sentencia Parcial* emitida el 8 de abril de 2024[1], por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro primario). Mediante el referido dictamen, el foro primario declaró *Ha Lugar* la *Petición de Sentencia Declaratoria, Injunction Preliminar y Permanente al Amparo de la Ley 161-2009 y Demanda para Reclamar Compensación por Daños y Perjuicios* presentada por Luis M. Negrón Ocasio y Boricuas Auto Parts & Sales LLC (parte apelada). En consecuencia, se declaró nulo un permiso de construcción otorgado a los apelantes, y a raíz de ello, se ordenó la paralización inmediata de la obra y la demolición de lo construido.

---

[1] Notificada el 18 de abril de 2024.

Por los fundamentos que proceden, ***modificamos*** la sentencia parcial apelada y, así modificada, la ***confirmamos***.

**I.**

El 21 de enero de 2022, la Junta de Planificación presentó una *Querella*[2] contra los apelantes. Ello, luego de llevar a cabo una inspección de su finca[3], ubicada en el Barrio Anones del Municipio de Naranjito, donde identificaron remoción de corteza terrestre, al igual que movimiento y depósito de terreno. Tras entrevistar a los apelantes y estos informar a las autoridades presentes que no contaban con permisos para los trabajos que realizaban, la Junta de Planificación expidió una *Orden de Cese y Desista* junto con una multa administrativa de $24,000.00[4].

Ese mismo día, el Departamento de Recursos Naturales y Ambientales (DRNA) emitió su propia *Orden de Paralización*[5] contra los apelantes, por los mismos fundamentos.

Transcurrido más de un año desde la orden de paralización, el 1 de marzo de 2023, la parte apelada presentó una *Petición de Sentencia Declaratoria, Injunction Preliminar y Permanente al Amparo de la Ley 161-2009 y Demanda para Reclamar Compensación por Daños y Perjuicios.* En esta, alegó que los incesantes trabajos de movimiento de tierra y desviación de escorrentías que realizaban los apelantes, a pesar de no poseer permisos para ello y de existir dos órdenes de paralización en su contra, ocasionaron derrumbes de tierra y provocaron la inundación de su propiedad en varias ocasiones. Por tal razón, solicitaron la paralización permanente y demolición de la obra, al amparo del Artículo 14.1[6] de la *Ley para la Reforma del Proceso de Permisos de Puerto Rico* (Ley 161-2009).

---

[2] Apéndice del alegato en oposición, págs. 28-29.
[3] *Íd.*, Número de catastro 168-090-204-25.
[4] *Íd.,* en la pág. 41.
[5] *Íd.,* en la pág. 43.
[6] 23 LPRA § 9024.

El 10 de marzo de 2023, se presentó una segunda *Querella*[7], esta vez, por el DRNA. En dicha *Querella,* se reportó que los apelantes llevaron a cabo movimientos y remoción de corteza terrestre y capa vegetal sin los pertinentes permisos y sin un plan de control de erosión. En consecuencia, el DRNA impuso tres multas administrativas y ordenó la restauración y/o mitigación necesaria.

Aun cuando la petición de interdicto estaba ante la consideración del TPI, el 5 de mayo de 2023, el Profesional Autorizado Noé González Figueroa (PA González Figueroa), designado para ello al amparo de la Ley 161-2009[8], otorgó un permiso de construcción (núm. 2023-485054PCOC-034484) a los apelantes. El referido permiso fue expedido para la construcción de una estructura dedicada al cuido de animales, a ser ubicada en la finca objeto de la presente controversia.

Luego de múltiples trámites procesales, el TPI celebró varias vistas de interdicto en las cuales testificaron: la Geóloga del DRNA, Sra. Ruth Vélez Rosado[9], el exdirector de la Oficina de Manejo de Emergencias del Municipio de Naranjito, Sr. José A. Figueroa Nieves[10], el Inspector del Cuerpo de Vigilantes de la Junta de Planificación, Sr. Aldrin Rodríguez Laureano[11] y el apelado, Luis M. Negrón Ocasio[12].

Por otra parte, en la última vista, celebrada el 26 de enero de 2024, testificó el Ingeniero Julio González Fortuño (Ing. González Fortuño), quien fungió como perito de la parte apelante.

El 8 de abril de 2024, el TPI emitió una *Sentencia Parcial,* mediante la cual declaró con lugar la petición de interdicto. En

---

[7] Apéndice del alegato en oposición, págs. 46-49.
[8] 23 LPRA § 9017, Artículo 7.1 (La figura del Profesional Autorizado fue creada por la Ley 161-2009 con el propósito de agilizar el proceso de expedición de permisos).
[9] Vista del 30 de mayo de 2023 y del 9 de junio de 2023.
[10] Vista del 30 de mayo de 2023.
[11] Vista del 9 de junio de 2023.
[12] Vista del 13 de octubre de 2023.

síntesis, el TPI concluyó que procedía la paralización de la obra ya que los apelantes no poseían los permisos pertinentes. En consecuencia, declaró ilegal los movimientos de terrenos, tala de árboles y construcción de estructuras en la finca de los apelantes. Asimismo, ordenó, so pena de desacato, detener de inmediato toda obra de construcción y/o movimiento de terreno, demoler cualquier obra ya construida y devolver la finca a su estado natural. Finalmente, el foro primario ordenó la continuación de los procedimientos referentes a la causa de acción de daños y perjuicios.

Para fundamentar su decisión, el foro primario determinó que los apelantes no lograron evidenciar la existencia de permisos para realizar las obras de movimiento de terreno[13]. Por otra parte, declaró nulo el permiso de construcción, por entender que su expedición fue una *ultra vires*. Lo anterior, ya que al estar vigente la *Orden de Cese y Desista* emitida por la Junta de Planificación y la *Orden de Paralización* del DRNA, la otorgación posterior del permiso pudiese tener el efecto de revocar dichas órdenes, pero quien único tiene potestad para ello, es la Oficina de Gerencia de Permisos (OGPe), puesto que un permiso con ese efecto sería uno de carácter discrecional, y según el Reglamento Conjunto de 2020[14], los Profesionales Autorizados solo pueden otorgar permisos de carácter ministerial.

---

[13] Apéndice 11 del Recurso de Apelación, pág. 75 Determinación de hecho núm. 28 de la *Sentencia Parcial,* ". En tercer lugar, el Ing. González Fortuño, único testigo de la parte Demandada, admitió que las obras que realizaron en la finca de los demandados (que documentó en su informe) incluyen movimientos de terreno, la construcción de un camino, cunetones, instalación de mallas, instalación de tuberías y otras para las cuales hace falta permiso con el cual no contaban los Demandados. Admitió además que el estado de derecho requería para esas obras la preparación y aprobación de un permiso de excavación de terrenos, corte y tala de árboles, presentación de un Plan CES (Control de Erosión) y aprobación de planos, ninguno de los cuales los demandados obtuvieron, en ningún momento".

[14] En *FCPR v ELA et. Al,* 211 DPR 521 (2023), el Reglamento Conjunto 2020, (Reglamento 9233) fue declarado nulo. No obstante, el 16 de junio de 2023, se adopta el Reglamento Conjunto 2023, Reglamento 9473. Al revisar el nuevo Reglamento y el Reglamento Conjunto 2020, consta que las secciones 2.2.1 y 2.2.2 se mantuvieron inalteradas. Para efectos prácticos de la discusión del caso de autos, utilizaremos la referencia del Reglamento Conjunto 2020 ya derogado.

Además, el TPI concluyó que el permiso de construcción nunca fue autenticado, por lo cual, no fue admitido en evidencia.

Inconforme con el dictamen del foro primario, el 3 de mayo de 2024, los apelantes presentaron una *Moción Solicitando Reconsideración, Determinaciones de Hechos Adicionales y Conclusiones de Derecho.* Esta fue declarada *No Ha Lugar* mediante *Orden* notificada el 7 de mayo de 2024.

Insatisfechos aun, recurren ante este foro intermedio mediante un recurso de apelación presentado el 5 de junio de 2024 y levantan los siguientes señalamientos de error:

1. Erró el TPI al no hacer determinaciones de hechos adicionales y conclusiones de derecho sobre el testimonio del Ing. González Fortuño y del informe pericial preparado por este.

2. Erró el TPI al declarar HA LUGAR la Petición de *Injunction* y Sentencia Declaratoria presentada por los Demandantes.

3. Erró el TPI al Ordenar a los Demandados so pena de desacato detener de inmediato toda obra de construcción y/o movimiento de terreno que se lleve a cabo en la finca de su propiedad, número de catastro 168-090-204-25 o cualquiera aledaña que pertenezca a los Demandados sin los permisos requeridos por Ley.

4. Erró el TPI al declarar nulo el permiso de construcción número 2023-485054-PCOC-034484.

5. Erró el TPI al ordenar la paralización de las obras de construcción comenzadas en la propiedad objeto de la Petición antes descrita.

6. Erró el TPI al ordenar a la parte demandada demoler cualquier obra de construcción realizada bajo el permiso de construcción número 2023-485054-PCOC-034484 y así mismo remover los escombros de la propiedad y devolverla a su estado natural, en un término de 120 días.

**II.**

La "Ley para la Reforma del Proceso de Permisos de Puerto Rico", Ley Núm.161 de 1 de diciembre de 2009, según enmendada, (Ley Núm. 161-2009), se creó a los fines de establecer el marco legal

y administrativo que rige la solicitud, evaluación, concesión y denegación de permisos por el Gobierno de Puerto Rico[15].

El Artículo 14.1 de la precitada pieza legislativa establece los parámetros mediante los cuales se puede solicitar al Tribunal de Primera Instancia la paralización y demolición de obras cuando se elaboran sin los permisos necesarios. En lo pertinente, establece que:

> [C]ualquier persona privada, natural o jurídica, que tenga un interés propietario o personal que podría verse adversamente afectado, podrá presentar una acción de injunction, mandamus, sentencia declaratoria, o cualquier otra acción adecuada para solicitar: 1) la revocación de una determinación final otorgada, cuya solicitud se haya hecho utilizando información incorrecta o falsa; 2) **la paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes**, o incumpliendo con las disposiciones y condiciones del permiso otorgado; 3) la paralización de un uso no autorizado o de una construcción autorizada mediante permiso, para la cual no se hayan realizado los pagos correspondientes a aranceles, pólizas, arbitrios y sellos; 4) **la demolición de obras construidas, que al momento de la presentación del recurso y al momento de adjudicar el mismo no cuenten con permiso de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado**[16].

La Ley 161-2009, a su vez, dispone sobre las facultades, deberes y funciones de la Junta de Planificación. Según el Artículo 14.5, una de sus facultades es:

> f) emitir órdenes automáticas de cese y desista o de paralización inmediata, ante la ausencia de permiso de construcción o de uso cuando, luego de hacer la investigación administrativa correspondiente, advenga en conocimiento de que el dueño de una obra no obtuvo un permiso de construcción previo al inicio de la misma o no obtuvo un permiso de uso previo a comenzar la operación[17].

Similarmente, la Ley Núm. 75 de 24 de junio de 1975, conocida como la *Ley Orgánica de la Junta de Planificación de Puerto Rico*, también expone las funciones y facultades de la Junta. Dicta su Artículo 11 que la Junta de Planificación podrá:

> (9) Expedir órdenes de hacer o no hacer y de cese y desistimiento para que se tomen medidas preventivas o de control que a su juicio sean necesarias para lograr los propósitos de esta ley y sus reglamentos. La persona natural o jurídica, contra la cual se expidiere una orden al amparo de los incisos (8) y (9) de este Artículo, podrá solicitar vista

---

[15] "Ley para la Reforma del Proceso de Permisos de Puerto Rico", Ley 161-2009, según enmendada, 23 LPRA sec. 9011, *et seq.*

[16] 23 LPRA § 9024 (énfasis suplido).

[17] 23 LPRA § 9024f.

administrativa para exponer razones para que la Junta considere revocar, modificar, o de otro modo, sostener dicha orden. La resolución, orden o dictamen de la Junta sólo podrá ser revisada por el Tribunal de Primera Instancia, Sala de San Juan o en la sala cuya jurisdicción comprenda el lugar donde esté ubicado el proyecto, quedando las mismas en todo su efecto y vigor hasta que el tribunal haga otra determinación al efecto[18].

En armonía con lo anterior, la Regla 7.1.8 del Reglamento Conjunto de 2020[19] nos ofrece más detalles sobre las órdenes de cese y desistimiento emitidas por la Junta de Planificación. Según dictamina la citada regla, la persona afectada "podrá solicitar vista administrativa para exponer las razones para que la JP considere revocar, modificar o de otro modo, sostener dicha orden, según dispuesto en el Artículo 11, inciso 9 de la Ley Núm. 75, dentro de un término de diez (10) días contados a partir de la notificación"[20].

El Reglamento Conjunto de 2020, también provee para que el DRNA emita "Órdenes de Restauración y de Hacer y No Hacer o cualquier otro recurso dentro de las facultades otorgadas por su Ley Orgánica, cuando: .... b. Las labores de extracción, remoción, excavación y dragado de los componentes de la corteza terrestre se hayan realizado sin permiso"[21].

**III.**

Aclaramos que, debido a la estructura de nuestro análisis, discutiremos los errores señalados de manera agrupada y en un orden distinto al presentado por los apelantes.

Comencemos a discutir el error relacionado a la declaración de nulidad del permiso de construcción. Adelantamos que el análisis del TPI es errado.

Primeramente, surge que el TPI consigna la prueba documental admitida en la *Sentencia Parcial*[22] apelada, a saber:

A. PARTE DEMANDANTE (**aquí, parte apelada**):

---

[18] 23 LPRA § 62j.
[19] Reglas 7.1.8, 3.5.7, 2.7.4.2 del Reglamento Conjunto 2020 (Reglamento 9233).
[20] Regla 7.1.8 del Reglamento Conjunto de 2020, *supra.*
[21] Regla 3.5.7 del Reglamento Conjunto de 2020, *supra.*
[22] Apéndice 11 del Recurso de Apelación, págs.65 y 66.

**Exhibit 1** • Expediente Oficina de Manejo de Emergencias de Naranjito (20 folios).

**Exhibit 2** • Informe de Evaluación Geológica Preliminar de Caso de la Región de San Juan (7 folios).

**Exhibit 3** • Informe de Investigación de la Junta de Planificación preparado por Aldrin Rodríguez Laureano el 4 de febrero de 2022 (16 PÁG).

**Exhibit 4** A-G • (7) Fotografías del 21 de enero de 2022, consta en un 'USB" presentado físicamente en el Tribunal mediante moción el 11 de julio de 2023 (entrada número 53 SUMAC).

**Exhibit 5 A-E** • (5) Fotografías consta en un "USB" presentado físicamente en el Tribunal mediante moción el 11 de julio de 2023 (entrada número 53 SUMAC) 11 de julio de 2023 (entrada número 53 SUMAC).

B.  PARTE DEMANDADA (aquí parte apelante)

**Identificación 1** • Curriculum Vitae del Ing. Julio González Fortuño. (2 folios) Entrada 49 SUMAC.

**Identificación 2** • Informe Pericial de Ing. Julio González Fortuño. (34 folios) Entrada 49 SUMAC.

No obstante, en la *Minuta* del 26 de enero de 2024[23], el TPI puntualizó que:

> **Se marca como prueba ofrecida admitida** por el tribunal la siguiente: **Exh 1** (ddo) Curriculum Vitae del Ing. Julio González Fortuño consta de 2 hojas (Entrada 49 Sumac como parte de los anejos). **Exh. 2** (ddo) Informe Pericial del Ing. Julio González (**antes Iden. 2 ddo**, consta de 34 págs.) Entrada 49 Sumac.

Como es conocido, las determinaciones sobre la admisibilidad de la prueba corresponden exclusivamente al juez, por tratarse de una cuestión estrictamente de derecho. Conforme a ello, la Regla 109 de las Reglas de Evidencia de Puerto Rico[24], regula lo concerniente a las determinaciones preliminares a la admisibilidad de evidencia. En lo pertinente, la referida regla dispone:

> (a) Admisibilidad en general
>
> Las cuestiones preliminares en relación con la capacidad de una persona para ser testigo, la existencia de un privilegio o la admisibilidad de evidencia serán determinadas por el tribunal, salvo a lo dispuesto en el inciso (b) de esta regla. Al hacer tales determinaciones, el tribunal

---

[23] Apéndice 10 del Recurso de Apelación, págs. 61 y 62.
[24] 32 LPRA Ap. VI, R. 109.

no queda obligado por las Reglas de Derecho Probatorio, excepto por aquéllas relativas a privilegios.

(b) Pertinencia condicionada a los hechos

Cuando la pertinencia de evidencia ofrecida depende de que se satisfaga una condición de hecho, el tribunal la admitirá al presentarse evidencia suficiente para sostener la conclusión de que la condición ha sido satisfecha. El tribunal puede también admitir la evidencia si posteriormente se presenta evidencia suficiente para sostener la conclusión de que la condición ha sido satisfecha.

(c) [...]

(d) [...]

Es inequívoco que, surge de una lectura de la Minuta antes mencionada que, la prueba presentada por la parte apelante fue admitida por el TPI. Por tal razón, el permiso de construcción, al ser parte del exhibit 2 de la parte apelante, fue admitido en evidencia. Superado el obstáculo probatorio, veamos la razón por la cual no procede la declaración de nulidad del permiso.

Como correctamente señaló la parte apelante, la sección 2.7.4.2 del Reglamento Conjunto de 2020, permite la otorgación retroactiva de un permiso de construcción[25]. Como vemos, el cuarto error fue cometido. Empero, **la concesión del permiso no tuvo el efecto de revocar las órdenes de cese y desista y de paralización**, pues, como explicaremos a continuación en la discusión de la agrupación de los errores relacionados a este asunto, la otorgación del permiso de construcción resulta insuficiente para levantar la paralización.

El segundo bloque de errores versa sobre la otorgación del interdicto y la subsiguiente orden que obliga la demolición de lo construido y restauración del terreno a su estado natural.

---

[25] Reglamento Conjunto, *supra,* "Los planos de estructuras construidas para los cuales no se haya aprobado un permiso de construcción, bajo las disposiciones de este Reglamento Conjunto, podrán presentarse, mediante la solicitud correspondiente para conformar y autorizar el uso de obras de estructuras construidas sin permisos".

Según las conclusiones de derecho plasmadas en la *Sentencia Parcial*, "la prueba estableció que los Demandados [...] efectuaron las obras de movimiento de terreno, aplicación de asfalto, y la construcción de una estructura sin contar con las autorizaciones y permisos correspondientes"[26]. Fue esa ausencia de permisos el fundamento de la *Orden de Cese y Desista* emitida por la Junta de Planificación. Dicho hecho también fue señalado en la *Sentencia Parcial*[27].

Sobre este particular, el foro primario expuso que "*la solicitud de Injunction presentada por los Demandantes se ancla además en las determinaciones de las agencias ejecutivas especializadas que concluyeron que los demandados carecían de los permisos requeridos por el derecho vigente respecto al ordenamiento territorial*"[28].

Según vimos en la exposición de derecho aplicable de esta sentencia, la Ley Núm. 161-2009, que regula todo lo concerniente a permisos, le otorga autoridad a la Junta de Planificación para "emitir órdenes automáticas de cese y desista o de paralización inmediata, ante la ausencia de permiso de construcción"[29]. La misma autoridad le fue conferida a la Junta de Planificación mediante su propia ley orgánica.

Cabe destacar que, la *Ley Orgánica de la Junta de Planificación de Puerto Rico*[30] establece que una *Orden de Cese y Desista* **permanecerá en vigor hasta tanto la propia Junta**

---

[26] Apéndice 11 del recurso de apelación, págs. 77 y 78.
[27] Apéndice 11 del recurso de apelación, pág. 78 y las Determinaciones de Hecho 15, 20, 21, 22 y 27.
[28] *Íd.*
[29] 23 LPRA § 9024f.
[30] Ley Núm. 75 de 24 de junio de 1975, según enmendada. Funciones y facultades generales de la Junta. (23 LPRA secc. 62j)[...] (9) Expedir órdenes de hacer o no hacer y de cese y desistimiento para que se tomen medidas preventivas o de control que a su juicio sean necesarias para lograr los propósitos de esta ley y sus reglamentos. La persona natural o jurídica, contra la cual se expidiere una orden al amparo de los incisos (8) y (9) de este Artículo, podrá solicitar vista administrativa para exponer razones para que la Junta considere revocar, modificar, o de otro modo, sostener dicha orden. La resolución, orden o dictamen de la Junta sólo podrá ser revisada por el Tribunal de Primera Instancia, Sala de San Juan o en la sala cuya jurisdicción comprenda el lugar donde esté ubicado el proyecto, quedando las mismas en todo su efecto y vigor hasta que el tribunal haga otra determinación al efecto.

**determine lo contrario mediante un proceso de revisión administrativa cuya determinación final puede ser revisada por el Tribunal de Primera Instancia.** Dicho proceso de impugnación debe comenzar dentro de un término de diez (10) días a partir de la notificación de la orden.

Como no surge del expediente que los apelantes hayan llevado a cabo los trámites para impugnar la *Orden de Cese y Desista*, colegimos que la misma sigue vigente. Lo mismo ocurre con la *Orden de Paralización* emitida por el DRNA[31].

En virtud de ello, el TPI se veía obligado a sostener la paralización de la obra. No solo tuvo ante sí las órdenes, sino que se desfiló prueba ante el propio foro sobre la ausencia de los permisos pertinentes. Con lo anterior ante su consideración, el foro tenía autoridad bajo el Artículo 14.1 de la Ley Núm. 161-2009 para declarar con lugar la petición de interdicto. Aunque los apelantes retroactivamente habían procurado el permiso de construcción 2023-485054, este únicamente se refiere a la construcción de una estructura para cuido de animales en un espacio de 429.29 metros. Por ende, es forzoso concluir que la expedición de este no era suficiente para subsanar los incumplimientos señalados en las querellas y órdenes, puesto que estas fueron por ausencia de permiso de construcción, y de permisos de remoción o extracción de corteza terrestre, movimiento y depósito de terreno, así como un plan de erosión. La otorgación del interdicto era procedente ya que el permiso de construcción no era suficiente para levantar las órdenes impuestas sobre la finca.

Adviértase que, el Tribunal Supremo en *Ortiz Matos v. Mora Development*, 187 DPR, 649, 656 (2013), determina que el

---

[31] El proceso para impugnar la orden del DRNA está regulado por el Reglamento de Procedimientos Administrativos del DRNA, Reglamento Núm. 6442, 26 de abril de 2002 y la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, 3 LPRA sec. 9672.

*procedimiento de ejecución de orden no debe ser confundido con el procedimiento de revisión judicial. Industria Cortinera, Inc. v. P.R. Telephone Co.,* 132 DPR 654, 664 (1993). *Durante la revisión judicial, el tribunal revisa la determinación de la agencia administrativa mientras que, en la ejecución de orden, este implanta la determinación administrativa una vez adviene final y firme, sin pasar juicio sobre su corrección. Industria Cortinera, Inc. v. P.R. Telephone Co., supra.* Por tanto, no erró el TPI al declarar con lugar el interdicto y reafirmar la paralización ya impuesta a la obra. Por consiguiente, los errores segundo, tercero y quinto no fueron cometidos por el foro primario.

Como corolario de lo anterior, entendemos que, el sexto error se cometió parcialmente. Fíjese que la orden de demolición y restauración de la finca, emitida por el TPI, no puede incidir con el área que establece el permiso de uso expedido. Entiéndase que el permiso de construcción #2023-485054 únicamente se refiere a la construcción de una estructura para cuido de animales en un espacio de 429.29 metros cuadrados[32]. El Art. 14.1 de la Ley Núm. 161-2009 solo contempla la demolición en casos donde no exista un permiso de construcción o este haya sido revocado. La sentencia debe ser modificada a esos efectos.

Finalmente, el primer error está relacionado a la insuficiencia de determinaciones de hechos y derecho relacionadas al testimonio del Ing. González Fortuño.

A pesar de que los apelantes aludieron al valor probatorio que le otorgó el TPI al testimonio del Ing. González Fortuño, fallaron en fundamentar sus escuetos argumentos con la transcripción del testimonio del mencionado perito. No obstante, este Tribunal se dio la tarea de leer dicha transcripción. Evaluado el testimonio del

---

[32] Apéndice 16 del recurso de apelación, págs. 137-140.

perito, nos vemos obligados a otorgarle al foro primario deferencia en su apreciación de la prueba[33].

De las determinaciones de hechos y derecho incorporadas en la *Sentencia Parcial,* no identificamos actuación u omisión que indique que la evaluación del testimonio haya sido una arbitraria o caprichosa que justifique nuestra intervención[34]. Tampoco vemos como unas determinaciones adicionales, que no fueron provistas por los apelantes, pudiesen afectar el dictamen apelado.

**IV.**

Por los fundamentos antes expuestos, se ***modifica*** la *Sentencia Parcial* apelada a los fines de sostener la paralización, demolición, remover escombros y restauración en todas las áreas, excepto el espacio de (429.29 metros cuadrados[35]), que fue concedido en el permiso de construcción número 2023-485054 y, así modificada, se ***confirma***.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[33] *Suárez Cáceres v. Com. Estatal Elecciones,* 176 DPR 31, 67 (2009); *López v. Dr. Cañizares,* 163 DPR 119, 135 (2004).

[34] *E.L.A. v. S.L.G. Negrón-Rodríguez,* 184 DPR 464, 486 (2012); *Serrano Muñoz v. Auxilio Mutuo,* 171 DPR 717, 741 (2007).

[35] Apéndice 16 del recurso de apelación, págs. 137-140.